**14-0767-cv**
**Mitchell et al. v. The City of New York et al.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: February 20, 2015          Decided: October 28, 2016)

Docket No.  14-0767-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MELINDA MITCHELL, individually and on behalf of a class of all others similarly situated, HARVEY MITCHELL, individually and on behalf of a class of all others similarly situated,

Plaintiffs-Appellants,

v.

THE CITY OF NEW YORK, a municipal entity, NYC POLICE OFFICER JAMES SCHUESSLER, Shield No. 28718, RICHARD ROES, 1-50 NEW YORK CITY POLICE SUPERVISORS AND COMMANDERS, JOHN DOES, 1-50 NEW YORK CITY POLICE OFFICERS, individually, and in their official capacities, jointly and severally, POLICE OFFICER JOSEPH BRINADZE, NYPD CAPTAIN JOSEPH GULOTTA, NYPD SERGEANT DANIELLE ROVENTINI, and NYPD LIEUTENANT KATHLEEN CAESAR,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - - -

B e f o r e:   WINTER, POOLER, and SACK, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, Judge), granting appellees' motion for summary judgment and dismissing appellants' claims.  We hold that there is a genuine issue of material fact as to whether the New York City Police officers had probable cause to arrest appellants for trespass.  The district court therefore improperly dismissed appellants' false arrest claim.  We affirm as to all other claims.

1

JEFFREY A. ROTHMAN (Jonathan C. Moore & Joshua S. Moskovitz, Beldock Levine & Hoffman LLP, New York, NY, on the brief) New York, NY, for Plaintiffs-Appellants.

DRAKE A. COLLEY, for Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, for Defendants-Appellees.

WINTER, Circuit Judge:

Melinda Mitchell and Harvey Mitchell -- we will refer to them as Melinda and Harvey because they are not related -- along with other similarly situated individuals, appeal from Judge Kaplan's dismissal of their complaint on a grant of summary judgment to appellees. We hold that there is a genuine dispute of material fact as to whether the appellee police officers had probable cause to arrest appellants for trespass. We therefore vacate the judgment. We remand the false arrest claim and appellees' claim of qualified immunity related to the false arrest. We affirm the dismissal of the malicious prosecution, abuse of process, and municipal liability claims.

## BACKGROUND

This appeal is from a grant of summary judgment, and the following recitation of facts, therefore, views the evidentiary record in the light most favorable to appellants, the non-moving party. Rentas v. Ruffin, 816 F.3d 214, 220 (2d Cir. 2016) (citation omitted).

2

In December 2010, Lieutenant Kathleen Caesar of the New York City Police Department ("NYPD") responded to a report of a sexual assault at a brownstone located at 2142 Atlantic Avenue, in Brooklyn, New York. When Caesar arrived with another police officer, she saw two women, one of whom said she was robbed in the brownstone. After no one responded to her knocks at the front door, Caesar entered the premises through the back door. She found no one inside. On the first floor, she observed a bar area next to the kitchen, a room with a dance pole, and a living room with no furniture. Caesar concluded that the house was abandoned. She told her colleague Lieutenant John Hopkins of this and later made it a point to drive by the brownstone during her patrol shifts since she believed the brownstone might have been "being used for parties." J. App'x at 104.

About a month later, on January 9, 2011, Melinda and Harvey attended a party at the 2142 Atlantic Avenue brownstone. While both were invited by acquaintances, neither knew who was hosting the party or who owned the property. To enter the brownstone, they opened a small unlocked gate, and proceeded through the front door. There were no signs prohibiting entrance to the building. There was, however, a realtor's for-sale sign on the property.

At about 2:15 a.m. on January 9, 2011, Caesar was driving by the brownstone when she saw three people standing on its stoop.

3

She called Hopkins to inform him that suspicious activity might be taking place at the premises. After Hopkins, Captain Joseph Gulotta, and other officers arrived, Caesar knocked at the front door but no one answered. She tried to open the door, but it was locked. She and some of the officers proceeded to the rear of the property and entered the brownstone through the back door. Caesar then made her way through the brownstone, past "about 30 kids" to the front door to let in more officers. Id. at 127-128.

Inside, the officers found at least 30 people. According to appellants, space was set up for a party, with a bar, a projector screen, disco lights, running water, working heat, DJ equipment, and an area with a big TV and some couches. Gulotta testified at his deposition that he saw that electricity was being routed in from outside the house via extension cords. Gulotta also testified at his deposition that he smelled marijuana upon entering the brownstone, and another officer, James Schuessler, testified at his deposition that he recalled seeing six or eight "nickel" or "dime" bags containing what looked to be marijuana and crack cocaine on the floor of the brownstone.

Upon entering the brownstone, the police told everyone to be quiet and then repeatedly asked who owned the property and who was hosting the party. Some people replied that they did not know who the owner was. When no one revealed the owner or host, Gulotta ordered the arrest of everyone present. The arrests were

4

based on Gulotta's belief that everyone at the party had:  (i) "trespass[ed]"; (ii) "loiter[ed] for the purpose of using narcotics"; and (iii) "endanger[ed] the welfare of a child because there was a 12 year-old child present." Id. at 582.  The only issue raised in this appeal with regards to the arrests is whether there was probable cause for the arrests for trespass.

Melinda and Harvey were arrested and both were handcuffed. Melinda was handcuffed for approximately one hour by an officer who refused to loosen the handcuffs when she complained they were too tight.  The handcuffs caused bruising to her wrist that required her to take Advil and use an ice pack for two days. Harvey was handcuffed for 20 to 30 minutes; he alleged the handcuffs left marks on his arms but required no medical treatment.

All arrestees were processed at the precinct and their fingerprints and mug shots taken.  Melinda was released with a "Desk Appearance Ticket" ("DAT"), which required her to appear in court at a later date.  Harvey was processed through the Brooklyn Central Booking facility and arraigned.

After the arrests, several police officers each submitted statements entitled, "Supporting Deposition – Trespass in a Dwelling and Resisting Arrest," to the Kings County District Attorney's Office.  The statements attested to the officers' understanding that the brownstone was categorized as a Formal

5

Trespass Affidavit Program ("FTAP") dwelling and that the NYPD was the lawful custodian of the property.[1]  Notwithstanding the officers' statement at the time of the arrest, it is now undisputed that the brownstone was not part of FTAP.  The record does not illuminate whether the building was privately owned or abandoned to City custody, although demonstrating City custody would have helped the defense to show probable cause for the trespass arrests.

The Kings County District Attorney's Office later declined to prosecute Melinda and others who received a DAT following the arrests at the brownstone.  It also dropped all charges against Harvey pursuant to an Adjournment in Contemplation of Dismissal.

On April 6, 2012, appellants filed their original complaint in the present action, in which they assert Section 1983 claims for false arrest, malicious prosecution, abuse of process, and excessive force.  On November 5, 2012, appellants filed their amended complaint asserting the same Section 1983 claims.

After discovery, both parties moved for summary judgment. Appellees moved for summary judgment on all of appellants'

---

[1] The FTAP was developed to allow tenants and landlords to complain of drug-related activity occurring in the common areas of multi-dwelling apartment buildings.  Landlords participating in the FTAP are asked to sign an affidavit authorizing the police to perform vertical patrols in their buildings.  The police are also given keys to common areas and a list of tenant residents. See, e.g., Charles J. Hynes, Ask the DA: Preventing Illegal Activity in Apartment-Building Hallways, Brooklyn Daily Eagle (Sept. 19, 2012), www.brooklyneagle.com/articles/ask-da-preventing-illegal-activity-apartment-building-hallways-2012-09-19-090000; N.Y. Cty. Dist. Atty.'s Office, Trespass Affidavit Program, http://manhattanda.org/trespass-affidavit-program (last visited Oct. 26, 2016).

claims, whereas appellants moved for partial summary judgment only on their federal and state law claims for false arrest and their state law claims for battery.  The battery claim arising under New York law became moot, however, when the New York Appellate Division, Second Department, reversed the decision of the Kings County Supreme Court that granted appellants leave to file late notices of their claims.  Mitchell v. City of N.Y., 977 N.Y.S.2d 368, 370 (2013).  On February 11, 2013, the district court granted appellees' motion for summary judgment in its entirety.  Mitchell v. City of N.Y., No. 12 CIV. 2674 LAK, 2014 WL 535046, at *6 (S.D.N.Y. Feb. 11, 2014).  This timely appeal followed.

**DISCUSSION**

We review de novo a district court's grant of summary judgment, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor."  Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011)(citation omitted). "[I]t is well-settled that [this court] may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds nor relied upon by the district court." Holcomb v. Lykens, 337 F.3d 217, 223 (2d Cir. 2003) (internal quotation marks and citation omitted).

a)   False Arrest

   1) Probable Cause

   We first address the district court's holding that the police had probable cause to arrest appellants.  See Mitchell, 2014 WL 535046, at *3-*4. "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest" brought under Section 1983.  Jenkins v. City of N.Y., 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks and citations omitted). "Probable cause . . . exists when the [arresting] officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. at 84-85 (internal quotation marks and citations omitted).  A court deciding whether probable cause existed must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."  Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotation marks omitted).  Where "an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense."  Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010) (citation omitted).

On this record, it appears that no member of the NYPD made serious efforts to verify the legal status of the brownstone, i.e., the existence of a person or entity with a claim of occupancy of ownership, the property's status under the FTAP, or the lack of any claim or other status. When Lieutenant Caesar first visited the property in December 2010, she failed to investigate the ownership status of the brownstone and assumed it was abandoned, even though there were signs of use. Based on the evidence in the record, a trier of fact could find that, when Caesar re-entered the brownstone in the early morning of the day of the arrests, she did so based solely on her earlier conjectures that the brownstone was abandoned and that appellants were therefore trespassing. A trier of fact could further find this belief was unreasonable, given the for-sale sign in the front yard. Indeed, as Captain Gulotta conceded, the existence of a real estate sign suggested that someone claimed ownership of the brownstone.

Other officers stated (inconsistently) that they believed the brownstone to be part of the FTAP or to be abandoned. It is conceded that these beliefs were mistaken. Moreover, on this record, the only basis, if any, for these beliefs appears to be word of mouth among the officers.

Furthermore, in finding that the officers had probable cause to believe the brownstone was abandoned and that those present

9

were trespassing, the district court also relied heavily on the police officers' observation once they were inside the brownstone that there were extension cords running from the brownstone to another property as well as the fact that when asked, no one attending the party told the officers who owned the brownstone. Mitchell, 2014 WL 535046, at *4. Drawing all inferences in favor of the appellants, as we must, we conclude to the contrary that these facts are insufficient to establish on summary judgment as a matter of law that the officers had probable cause to believe that the house was abandoned.[2]

After the arrests, Officer Girard Moscato, having seen the for-sale sign outside the brownstone, tried to call Weichert Realty to inquire about the brownstone, but, after leaving a voice message, he did not follow up. See Colon v. City of N.Y., 455 N.E.2d 1248, 1250 (N.Y. 1983) ("[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.") (citation omitted). Indeed, as Captain Gulotta conceded, the existence of a real estate sign suggested that someone claimed ownership.

---

[2] The use of extension cords might have been for one of many reasons apart from the fact that the brownstone was abandoned and the attendees were trespassing, such as to avoid blowing a fuse or tripping a circuit breaker on the property, or because there was insufficient power available from the brownstone's electrical system without the addition of more from another source. Similarly, the silence of those present does not necessarily establish that the officers had a reasonable factual basis for thinking that the brownstone was abandoned.

10

Under New York law, one commits the crime of trespass if one "knowingly enters or remains unlawfully in or upon premises." N.Y. Penal Law § 140.05. The law provides:

> A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public.

Id. § 140.00(5). The New York Court of Appeals has held "it is the state's burden to prove that an invitee does not have privilege or license to remain on the premises. Because it is an element of the crime, officers must have probable cause to believe that a person does not have permission to be where she is before they arrest her for trespass." Davis v. City of N.Y., 902 F. Supp. 2d 405, 426 (S.D.N.Y. 2012) (discussing New York v. Brown, 254 N.E.2d 755, 756-57 (N.Y. 1969)). Appellees' mass arrest for trespass, on this record, could easily be found to have been based entirely on baseless and unreasonable conjectures and assumptions as to the ownership of the property or its FTAP status.

Under these circumstances, viewing the record in the light most favorable to appellants, a dispute of material fact exists

11

as to whether the police officers could have reasonably believed the appellants were trespassers. There was no reasonable basis for the belief that the building was in the FTAP, and the for-sale sign belied abandonment. The lack of any known claimant asserting legal occupancy of the premises on this record may eliminate any claim of unlawful entry by the police, but it provides no corresponding individualized probable cause to arrest appellants for trespass.

Accordingly, we vacate the dismissal of appellants' false arrest claims.

2) Qualified Immunity

We leave open for decision in the first instance by the district court on remand the question of whether the appellees are entitled to qualified immunity with respect to the false arrest claim. See Tellier v. Fields, 280 F.3d 69, 84 (2d Cir. 2000)("Because qualified immunity is an affirmative defense,... the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at the time.").

c)   Malicious Prosecution

We next address the district court's dismissal of appellant Melinda's federal and state malicious prosecution claims. See Mitchell, 2014 WL 535046, at *5. In order to prevail on such a claim under both Section 1983 and New York State law, a plaintiff

is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) "that there was no probable cause for the proceeding"; and (iv) "that the proceeding was instituted with malice." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003) (citations omitted); see also Colon, 60 N.Y.2d at 82 (similar). When raising a malicious prosecution claim under Section 1983, a plaintiff must also show a "seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." Washington v. Cty. of Rockland, 373 F.3d 310, 316 (2d Cir. 2004) (internal quotation marks and citation omitted).

We first address Melinda's state law and federal law claims under the Kinzer test. We have held that, under New York law, the issuance of a DAT constitutes a criminal proceeding initiation. See Stampf v. Long Island R.R. Co., 761 F.3d 192, 199 (2d Cir. 2014) ("[W]e adhere to the position we took in Rosario that, under New York law, the issuance of a DAT sufficiently initiates a criminal prosecution to sustain a claim of malicious prosecution."); Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, 605 F.2d 1228, 1250 (2d Cir. 1979) ("[W]e believe that if a New York court faced the question before us it would rule that the issuance of [a DAT] commences a prosecution for purposes of determining whether an action for

13

malicious prosecution lies."). Accordingly, we find that Melinda has met the first Kinzer prong. She has also satisfied prongs two and three by showing, respectively, that the proceeding terminated in her favor when the District Attorney's Office declined to prosecute her, and, as discussed supra, that there was no probable cause for her arrest. Where her claim fails, however, is at the fourth prong, because she has not alleged or proffered any facts that the DAT was issued with malice. Both of her malicious prosecutions, therefore, fail.

As Melinda fails to state a malicious prosecution claim under the Kinzer test, we need not reach the question of whether her single court appearance constituted a seizure under the Fourth Amendment for purposes of her Section 1983 malicious prosecution claim, and we leave the question for another day.

We therefore hold the district court properly dismissed Melinda's state and federal malicious prosecution claims.

d) Abuse of Process

We now turn to appellants' abuse-of-process claim. To successfully state such a claim, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Savino v. City of N.Y., 331 F.3d 63, 77 (2d Cir. 2003).

14

Whether or not the police officers may have sought to retaliate against appellants by arresting them, appellants have proffered no evidence that the police officers attempted to achieve any other collateral purpose beyond arresting appellants for trespass. We hold, therefore, albeit for different reasons, that the district court correctly dismissed appellants' abuse-of-process claim.

e)   Municipal Liability

We turn finally to the district court's dismissal of appellants' municipal liability claim. See Mitchell, 2014 WL 535046, at *6. To prevail, a plaintiff must identify the existence of a municipal policy or practice that caused the alleged constitutional violation. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694-95 (1978). A plaintiff must also demonstrate a sufficient causal relationship between the violation and the municipal policy or practice. Id.

As discussed supra, while appellants have sufficiently supported their claim that their arrests lacked individual probable cause, they have not supported their claim of municipal liability. Appellants have proffered no evidence to show that the arrests occurred pursuant to a city policy or practice. See City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985)(plurality) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability

15

under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy[] [that] can be attributed to a municipal policymaker.") (plurality); accord Fenner v. City of N.Y., No. 08 Civ. 2355(BMC)(LB), 2009 WL 5066810, at *4 (E.D.N.Y. Dec. 21, 2009) ("At most, plaintiff has identified a single incident of a constitutional violation.  Even assuming such a violation occurred . . . the Supreme Court has squarely held that this is insufficient to create liability under Monell.") (citation omitted), aff'd, 392 F. App'x 892, 894 (2d Cir. 2010) (summary order).  Therefore, the district court correctly dismissed appellants' Monell claim.

## CONCLUSION

For the reasons stated, we vacate and remand the lower court's summary judgment rulings as to the false arrest claims and the question of qualified immunity.  We affirm the district court's remaining summary judgment rulings.

16