16-2429-cv
*Basinski v. City of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of August, two thousand seventeen.

Present:
> DENNIS JACOBS,
> DEBRA ANN LIVINGSTON,
> > *Circuit Judges*,
> GEORGE B. DANIELS,
> > *District Judge*.[*]

---

SEAN BASINSKI,

> *Plaintiff-Appellant*,

v.                                                      16-2429

CITY OF NEW YORK, NYPD POLICE OFFICER ROBERT BROWNE, SHIELD #3196, and LIEUTENANT JOHN COCCHI, in their individual capacities,

> *Defendants-Appellees*.[†]

---

[*] Judge George B. Daniels, of the United States District Court for the Southern District of New York, sitting by designation.

[†] The Clerk of Court is respectfully directed to amend the official caption as shown above.

1

For Plaintiff-Appellant:	SCOTT A. KORENBAUM, ESQ., New York, New York; David B. Rankin, Rankin & Taylor, PLLC, New York, New York

For Defendants-Appellees:	CLAUDE S. PLATTON (Max O. McCann, *on the brief*), for Zachary W. Carter, Corporation Counsel of the City of New York, New York, New York

**UPON DUE CONSIDERATION WHEREOF it is hereby ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Sean Basinski appeals from a judgment of the United States District Court for the Southern District of New York (Swain, *J.*), entered on June 14, 2016, granting summary judgment to the Defendants-Appellees on Basinski's claims pursuant to 42 U.S.C. § 1983 for false arrest and false imprisonment, violations of his rights under the Fourth Amendment to the United States Constitution; interference with protected activity and retaliatory arrest, violations of his rights under the First Amendment; and for malicious abuse of process.[1] We assume the parties' familiarity with the facts, procedural history, and specification of the issues on appeal, some of which we discuss briefly below.

I.	**Background**[2]

On September 19, 2013, Basinski and two professional acquaintances were walking along West 54th Street toward Eighth Avenue in New York City. Basinski, the founder and director of the Street Vendor Project at the Urban Justice Center in New York City, noticed a hot dog vendor stationed outside of the Midtown North Precinct ("the Precinct") of the New York Police Department ("NYPD"). Because Basinski thought this was an unusual spot for a vendor

---

[1] Basinski withdrew his *Monell* claim before the court ruled on summary judgment and affirmed that he did not raise a claim for malicious prosecution.

[2] The following facts are drawn from the summary judgment record and, unless otherwise noted, are undisputed.

to be, he stopped and asked the vendor what he was doing. The vendor, Ahmed Elbendary, responded that he was waiting for an officer to come out from the Precinct and issue him two summonses. Basinski took photographs of Elbendary's cart so there would be a record of its items in case the police seized the cart. While Elbendary, Basinski, and his two acquaintances were conversing near Elbendary's cart, Defendant-Appellee NYPD Officer Robert Browne emerged from the Precinct. As Basinski and his two acquaintances were leaving, Elbendary offered them free drinks, which they declined. At that point, Browne told Elbendary "not to sell" in this location, and Basinski informed Browne that Elbendary was not selling the beverages. Once Browne approached the group, Basinski began to film the encounter on his phone. Basinski's professional acquaintance, Mohammed Omar, also began filming on his phone. The videos are in the record.[3]

As can be seen on the video, Basinski was standing next to the food cart. Browne asked Basinski to move away from the cart, saying "please do me a favor while I conduct police business." Joint App'x 352 ("Basinski Video"); *id.* at 0:00–02. Basinski responded that he was not in Browne's way. Browne asked again, and Basinski asked where he should go. Basinski then moved a few paces away from the cart in the direction Browne requested. At this point, Browne was standing between the food cart and Basinski, and the two were surrounded by a pile of garbage bags on one side and a parked vehicle on the other. Browne continued to ask Basinski to move, and Basinski declined. Browne asked Basinski for identification, and

---

[3] The Defendants-Appellees claim that the video recordings do not show the entire interaction between Basinski and Browne. The videos end with Basinski's arrest, so any additional relevant conduct must have occurred prior to the beginning of the Basinski Video. Because this appeal arises from a grant of summary judgment, and because Basinski was the nonmovant, this Court must construe the facts in the light most favorable to Basinski, *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016), and disregard any evidence in the Defendants-Appellees' favor that a jury would not be required to believe, *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015). Thus, we must presume that the videos captured the entire interaction after Basinski's statement to the effect that Elbendary was not vending.

Basinski declined. Browne stated again that Basinski needed to move. When Basinski asked why he needed to move, Browne replied that Basinski was standing in an area where he was not allowed to be and involving himself in a police matter unrelated to him. *Id.* at 0:33–41. Then, Browne again asked Basinski to move to the side, stating that he was now "caus[ing] people to stop [and] stare." *Id.* at 1:05–14. During the next thirty seconds, Browne continued to ask Basinski to move to the side, and Basinski continued to respond that he was not in Browne's way.

Then, Browne turned away from Basinski. Browne asked another uniformed police officer who was standing nearby to go into the Precinct and ask for someone. With his back to Basinski, Browne talked to other individuals about the situation. He asked another person standing nearby to move. At this point, Basinski interjected and moved his phone closer to Browne, stating "that's where you wanted me to go." *Id.* at 2:18. Browne turned around to face Basinski and stated that he was not talking to Basinski at that moment. Browne continued to ask Basinski to move. Basinski repeatedly stated that he was not in Browne's way. Again, Browne turned away from Basinski and directed others standing around to move.

Browne, with his side to Basinski, began speaking to a third party outside of the video frame, Defendant-Appellee NYPD Lieutenant John Cocchi. As Browne was explaining the situation to Cocchi, Basinski again interjected, saying "you don't like the fact that I'm videotaping you." *Id.* at 3:33. Browne continued describing the situation to Cocchi. Then, Cocchi turned his attention to Basinski and asked why he had not complied with Browne's instructions to move. Basinski defended his conduct. After Basinski refused Cocchi's

4

repeated requests for identification, Cocchi instructed Basinski to turn around and other unidentified officers arrested him.[4]

Basinski was charged with the obstruction of governmental administration, N.Y. Penal Law § 195.05, and disorderly conduct: obstructing traffic, *id.* § 240.20(5). Basinski ultimately accepted an adjournment in contemplation of dismissal of the charges. On February 20, 2014, Basinski filed this lawsuit against Browne, Cocchi, and the City of New York in the United States District Court for the Southern District of New York. He asserted various claims pursuant to 42 U.S.C. § 1983 for violations of his rights under the Fourth and First Amendments and for malicious abuse of process. He also asserted a *Monell* claim against the City of New York. *See Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The Defendants-Appellees moved for summary judgment, arguing that there was arguable probable cause for Basinski's arrest. The district court granted summary judgment to the Defendants-Appellees on qualified immunity grounds, concluding that the NYPD had arguable probable cause to arrest Basinski for the obstruction of governmental administration. On July 12, 2016, Basinski timely filed a notice of appeal, challenging the court's dismissal of his Fourth Amendment claims.[5]

## II.    Discussion

### 1.    Standard of Review

This Court reviews de novo a district court's grant of summary judgment on the basis of qualified immunity. *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016). We view

---

[4] According to Basinski's deposition testimony, at the time Cocchi placed Basinski in handcuffs, vendor Elbendary was "on the other side of his [food] cart" and "probably 15 feet away." Joint App'x 246.

[5] Basinski does not challenge on appeal the district court's determination that a finding of arguable probable cause for an arrest vitiates a claim for abuse of process based on that arrest. Nor does he challenge the dismissal of his First Amendment claims.

5

the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in his favor. *Id.* We "must disregard all evidence favorable to the moving party that [a] jury is not required to believe." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We "may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied on by the district court." *Mitchell*, 841 F.3d at 77 (quoting *Holcomb v. Lykens*, 337 F.3d 217, 223 (2d. Cir. 2003)).

### 2. Qualified Immunity

Qualified immunity protects officials from damages liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). A police officer is entitled to qualified immunity for a false arrest claim if there was at least "arguable probable cause" at the time the officer arrested the plaintiff. *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "A police officer has arguable probable cause 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Figueroa*, 825 F.3d at 100 (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)). Stated differently, "our [qualified immunity] inquiry is . . . whether *any*

6

reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the [arrest] was lawful." *Figueroa*, 825 F.3d at 100. Qualified immunity, thus, sweeps broadly, precluding damages claims against "all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 136 S. Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### 3. Obstruction of Governmental Administration

Here, the parties dispute whether there was arguable probable cause to arrest Basinski for the obstruction of governmental administration. A person is guilty of obstructing governmental administration in the second degree

> when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, *by means of intimidation, physical force or interference*, or by means of any independently unlawful act . . . .

N.Y. Penal Law § 195.05 (emphasis added). This offense has four elements: "(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference." *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010) (quoting *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995)). Basinski argues that the fourth element was not met in this case. The district court determined that Browne had arguable probable cause to arrest Basinski for obstruction of governmental administration by intimidation. We hold instead that Browne had arguable probable cause to arrest Basinski for obstruction of governmental administration by interference.

"[I]nterference" within the meaning of Section 195.05 must be a "physical interference." *People v. Case*, 42 N.Y.2d 98, 101 (1977). "[P]urely verbal interference may not satisfy the 'physical' component under [Section] 195.05." *In re Davan L.*, 91 N.Y.2d 88, 91 (1997); *see*

7

*Uzoukwu v. City of New York*, 805 F.3d 409, 415 (2d Cir. 2015). New York courts, however, have construed "physical interference" broadly. *See Davan L.*, 91 N.Y.2d at 91 (stating that the legislature "intended and enacted that criminal responsibility should attach to minimal interference set in motion to frustrate police activity"). For example, an individual need not make physical contact with the public servant to be guilty of this crime. *See, e.g.*, *id.* Instead, "'inappropriate and disruptive conduct at the scene of the performance of an official function'" is sufficient. *Kass v. City of New York*, 864 F.3d 200, 209 (2d Cir. 2017) (quoting *People v. Romeo*, 779 N.Y.S.2d 860, 861-62 (3d Dep't 2004) (internal citations omitted)); *see id.* at 204-05, 210 (holding that a reasonable officer could have concluded that Kass, a passer-by who resisted verbal and physical commands to move away from police barricades, "physically" interfered with police activity); *Davan L.*, 91 N.Y.2d at 89, 91.

For example, in *Davan L.*, the police planned to conduct an undercover "buy" at a storefront in Jamaica, Queens. *Id.* at 89. A juvenile "at a nearby corner" was "slowly and repeatedly circling the block on his bicycle within a half-hour period." *Id.* An undercover officer approached the juvenile, identified himself, and "urged the youngster not to get involved, not to return near the store, and to depart in the opposite direction." *Id.* The juvenile then "turned his bicycle around and entered the identified zone[,] [p]edal[ed] past the front of the store, [and] yelled 'cops, cops . . . watch out, [f]ive-0, police are coming.'" *Id.* (omission in original). The New York Court of Appeals concluded that "th[is] evidence [wa]s sufficient to sustain" a conviction for obstructing governmental interference.[6] *Id.* The court noted that "[t]he police activity area was confined and defined," the juvenile was "put on specific, direct

---

[6] The relevant analysis for juvenile delinquency adjudication is whether the evidence would be sufficient to convict the offender were he an adult. *Id.*

notice," the juvenile "intentionally intruded himself into the specific area of police activity," and his verbal utterances were related to the police business at issue. *Id.* at 91. Therefore, his "interrelated conduct—actions coupled with words—fit[] within the originally promulgated and contemplated specifications of" Section 195.05. *Id.* at 92.

Here, a reasonable officer could conclude that Basinski engaged in disruptive conduct at the scene of the performance of an official function. Browne put Basinski on "specific, direct" notice multiple times, telling him that he was "standing in an area that [he was] not allowed to be standing in." Basinski Video at 0:33–41. In addition, the police activity area was arguably "confined and defined" as it was in *Davan L.* For instance, when Browne asked another individual standing nearby to move, Basinski acknowledged that Browne wanted him to move to the same place where that individual moved. *Id.* at 2:15 (Browne asking another person standing nearby to move), 2:18 (Basinski acknowledging that the spot to which that individual moved was "where [Browne] wanted [him] to go"). Basinski intentionally remained in the specific area of police activity despite Browne's repeated requests for him to move away, as Kass did before his arrest. *See, e.g.*, Basinski Video at 0:20-41, 2:14-15 (Basinski stepping slightly forward toward Browne and moving his phone to film over Browne's shoulder); *see also Kass*, 864 F.3d at 204. Finally, Basinski verbally interjected and reengaged with Browne once Browne had turned his back to Basinski and was speaking to other individuals. *See* Basinski Video at 2:18-20 (showing Basinski interjecting once Browne had turned his back to Basinski by saying "that's where you wanted me to go," and Browne turning around to face Basinski and saying, "listen, I'm not talking to you right now, understand that"), 2:23 (Basinski responding "I'm talking to you"); *see also Davan L.*, 91 N.Y.2d at 91.

Taken together, it is at least arguable that Basinski's interrelated "words and deeds" were "sufficiently obstructive to justify an arrest." *Kass*, 864 F.3d at 209; *see In re Isaiah C.*, 946 N.Y.S.2d 859 (1st Dep't 2012) (Evidence was sufficient to sustain conviction for obstruction where, while "court officers attempted to subdue and arrest appellant's companion following a courtroom disruption," the juvenile "approach[ed] them in a belligerent manner with raised hands despite their repeated directives to stay away, and intentionally sought to interfere with the officers' performance of their duties."); *Romeo*, 779 N.Y.S.2d at 861 ("[E]vidence that defendant was belligerent, uncooperative and refused several direct requests that he keep away from the officers as they attempted to subdue his girlfriend was sufficient to establish the crime of obstructing governmental administration in the second degree."). A "reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that" it was lawful to arrest Basinski for obstruction of governmental administration by physical interference under these circumstances. *Figueroa*, 825 F.3d at 100. Therefore, the Defendants-Appellees are entitled to qualified immunity on Basinski's false arrest and false imprisonment claims.

\* \* \*

We have considered Basinski's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10