17-970-cv
Lanning v. City of Glens Falls et al.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2017

(Argued: April 18, 2018     Decided: November 7, 2018)

Docket No. 17-970-cv

———————————————————————

DAVID LANNING JR.,

*Plaintiff-Appellant*,

v.

CITY OF GLENS FALLS, GLENS FALLS POLICE DEPARTMENT, RYAN ASHE, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, COUNTY OF WARREN, WARREN COUNTY SHERIFF'S DEPARTMENT, WARREN COUNTY DISTRICT ATTORNEY'S OFFICE, KEVIN CONINE, JR., IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES,

*Defendants-Appellees*.

———————————————————————

Before:

KEARSE, CABRANES, and LOHIER, *Circuit Judges*.

David Lanning Jr. brought suit under 42 U.S.C. § 1983 against the City of Glens Falls, the Glens Falls Police Department, Officer Ryan Ashe, the County of Warren, the Warren County Sheriff's Department, the Warren County District Attorney's Office, and Officer Kevin Conine, Jr.  He alleged that the Defendants maliciously prosecuted him in violation of the Fourth Amendment and denied him equal protection of the laws in violation of the Fourteenth Amendment.  The

United States District Court for the Northern District of New York (D'Agostino, J.) granted the Defendants' motions for judgment on the pleadings, holding, among other things, that Lanning failed to plead that the criminal proceedings against him had been terminated in his favor. Concluding that New York State law cannot alter the standard that applies to the "favorable termination" element of a federal constitutional claim of malicious prosecution, which requires the plaintiff to show that the proceedings ended in a manner that affirmatively indicates his innocence, we **AFFIRM**.

JAMES EDWARD GROSS, Albany, NY, *for Plaintiff-Appellant*.

JAMES A. RESILA (William C. Firth, *on the brief*), Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C., Albany, NY, *for Defendants-Appellees* City of Glens Falls, Glens Falls Police Department, and Ryan Ashe.

GREGG T. JOHNSON, Lemire, Johnson & Higgins, LLC, Malta, NY *for Defendants-Appellees* County of Warren, Warren County Sheriff's Department, Warren County District Attorney's Office, and Kevin Conine, Jr.

LOHIER, *Circuit Judge*:

This case requires us primarily to consider whether New York law can alter the standard that applies to the "favorable termination" element of a malicious prosecution claim under 42 U.S.C. § 1983. In 2012 law enforcement officials in New York repeatedly arrested and charged David Lanning Jr.

("Lanning"), allegedly at the direction of Lanning's estranged wife and the Glens Falls police officer with whom she was romantically involved. After the criminal charges against Lanning were dismissed, he filed a § 1983 suit against the City of Glens Falls, the Glens Falls Police Department, and Officer Ryan Ashe (collectively, the "City Defendants"), as well as the County of Warren, the Warren County Sheriff's Department, the Warren County District Attorney's Office, and Officer Kevin Conine, Jr. (collectively, the "County Defendants"), claiming malicious prosecution in violation of the Fourth Amendment and denial of the right to equal protection of the laws in violation of the Fourteenth Amendment. The United States District Court for the Northern District of New York (D'Agostino, J.) dismissed Lanning's complaint on the pleadings.

Consistent with the traditional common law of torts, we hold that a plaintiff asserting a malicious prosecution claim under § 1983 must still show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence. We **AFFIRM** because Lanning has not plausibly pleaded that the criminal proceedings against him were terminated in a manner that indicates he was innocent of the charges, and because he failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment.

## BACKGROUND

"Because this matter comes to us on appeal from a judgment on the pleadings, we rely on the complaint, the answer, any written documents attached to them, and any matter of which [we] can take judicial notice for the factual background of the case." Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009). We construe the factual allegations in the light most favorable to Lanning, the losing party. See Latner v. Mount Sinai Health Sys., Inc., 879 F.3d 52, 54 (2d Cir. 2018).

### 1. Factual Allegations

In 2012 Lanning and his estranged wife, Jamie Lanning, were in the middle of a bitter divorce and child custody dispute. In February 2012 Jamie Lanning began to date Ryan Ashe, a police officer with the Glens Falls Police Department.

Shortly after midnight on May 24, 2012, Ashe drove Jamie Lanning to the Warren County Sheriff's Department Office, where she falsely reported to officer Conine, Ashe's friend and former police partner, that Lanning had threatened to kill her. Jamie Lanning also reported that Lanning was subject to a pre-existing order of protection in her favor. After taking Jamie Lanning's statement, Conine drove to Lanning's home, arrested him, drove him to the Warren County jail,

and detained him for about five hours. Later that morning, Lanning was arraigned in Queensbury Town Court on charges of criminal contempt in the first degree (for violating the order of protection) and aggravated harassment in the second degree. The complaint alleged that these charges resulted in a "no contact" order of protection against Lanning. After posting bail, Lanning was released pending a hearing on the charges.

On September 18, 2012, Lanning picked up his daughter at his mother-in-law's house, in keeping with a custody agreement with Jamie Lanning. Ashe and Jamie Lanning arrived at the house in Ashe's personal car and waited until Lanning drove his daughter to dinner. Ashe and Jamie Lanning then called the Glens Falls Police Department and falsely reported that Lanning had threatened them. When Lanning returned to the house with his daughter, a group of five Glens Falls police officers was waiting. The officers removed Lanning from his car and handcuffed him as Ashe and Jamie Lanning watched from Ashe's car. That night, the Glens Falls City Court arraigned Lanning on charges of criminal contempt in the first degree. He was kept in the Warren County jail for three days.

These charges from the Glens Falls City Court were then merged with the earlier charges from the Queensbury Town Court (stemming from Lanning's May 24, 2012 arrest) for prosecution in the County Court of Warren County. On September 21, 2012, the Warren County District Attorney's Office secured an indictment charging Lanning with three counts of criminal contempt in the first degree and one count of aggravated harassment in the second degree. After the indictment, Jamie Lanning allegedly received "[a]nother full order of protection." App'x 20. In March 2013, on the motion of the Warren County District Attorney's Office, the County Court reduced and transferred the charges back to the originating courts to be prosecuted separately as misdemeanors.

Lanning was then arraigned in Queensbury Town Court on one count of criminal contempt in the second degree and one count of aggravated harassment in the second degree related to the events of May 24, 2012. On May 7, 2014, during the course of a jury trial, the Queensbury Town Court dismissed the charges.[1]

---

[1] The complaint did not specify a basis for this dismissal. However, in their motion to dismiss, Appellees claimed that the dismissal was made "'in the interests of justice' based on jurisdictional issue [sic] that arose out of where Plaintiff's estranged wife was physically located." Dist. Ct. Dkt. No. 43-7, at 11. Appellees also attached a local news story supporting this account. Dist. Ct. Dkt. No. 43-6, at 4. In his opposing motion and

On April 9, 2013, Lanning had been separately arraigned in Glens Falls City Court on two counts of criminal contempt in the second degree related to the events of September 18, 2012. On November 7, 2014, the Glens Falls City Court dismissed these charges "in the interest of justice" pursuant to § 170.40 of the New York Criminal Procedure Law. The complaint alleged that the arrests of which Lanning complains led to his "being subject to numerous orders of protection." App'x 23.

On May 1, 2013, while the criminal charges were pending in Queensbury and Glens Falls, Ashe stopped Lanning's car and gave him three traffic tickets—one for aggravated unlicensed operation of a motor vehicle, one for changing lanes unsafely, and one for failing to notify the Department of Motor Vehicles of a change in address. All three tickets were dismissed in June 2013.

2. Procedural History

In February 2016 Lanning sued the City and County Defendants under § 1983, asserting three claims for malicious prosecution in violation of the Fourth Amendment with respect to his two arrests and the traffic stop and one claim for

---

an accompanying affidavit, Appellant claimed that the charges were dismissed "for lack of legally sufficient evidence presented by the ADA to support the charges *and* lack of jurisdiction," pursuant to NYCPL § 290.10. Dist. Ct. Dkt. No. 46, at 2; Dist. Ct. Dkt. No. 47, at 13-14.

denial of the right to equal protection of the laws in violation of the Fourteenth Amendment.

The District Court granted the City and County Defendants' motions for judgment on the pleadings. Lanning v. City of Glens Falls, No. 1:16-CV-00132, 2017 WL 922058, at *9 (N.D.N.Y. Mar. 8, 2017). As relevant to this appeal, the District Court dismissed all of Lanning's claims against Ashe and Conine in their individual capacities.[2] With respect to the malicious prosecution claim based on the May 24, 2012 arrest, the District Court held that Lanning failed to rebut the presumption of probable cause established by the indictment and also failed to plead Ashe's personal involvement in the prosecution. Id. at *3–6. The District Court also held that the criminal proceeding underlying Lanning's malicious prosecution claim based on the September 18, 2012 arrest was not terminated in Lanning's favor. Id. at *7. And with respect to the malicious prosecution claim based on Ashe's May 1, 2013 traffic stop, the District Court determined that Lanning had not adequately alleged a Fourth Amendment "seizure." Id. The District Court next dismissed Lanning's equal protection claim because he

---

[2] For reasons not relevant to this appeal, the District Court dismissed Lanning's claims against the Warren County District Attorney's Office, the Warren County Sheriff's Department, and the Glens Falls Police Department, as well as Lanning's claims against Ashe and Conine in their official capacities. See Lanning, 2017 WL 922058, at *3.

8

"failed to plausibly state that similarly situated persons were treated differently" by the City or County Defendants. Id. at *8. Having dismissed the underlying constitutional claims, the District Court also dismissed Lanning's Monell claims against the municipal defendants. Id. at *9.

This appeal followed.

**DISCUSSION**

Because the District Court dismissed Lanning's complaint on the pleadings, our review is de novo. See Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).

1. Malicious Prosecution Claims[3]

To prevail on his § 1983 claims for malicious prosecution, Lanning was required to show "a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment." Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir. 2004) (quotation marks omitted). He also had to show that criminal proceedings were initiated or continued against him, with malice and without probable cause,

---

[3] Lanning's brief does not challenge the District Court's dismissal of his third malicious prosecution claim (based on the May 1, 2013 traffic stop). He has therefore abandoned any challenge to the dismissal of that claim. See Morrison v. Johnson, 429 F.3d 48, 52 (2d Cir. 2005).

9

and were terminated in his favor.  See Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016); Swartz v. Insogna, 704 F.3d 105, 111–12 (2d Cir. 2013).  We conclude that Lanning failed adequately to allege that his criminal proceedings were terminated in his favor under § 1983.[4]

In urging a contrary conclusion, Lanning points to the standard adopted by the New York Court of Appeals for the tort of malicious prosecution.  Under that standard, he argues, the favorable termination element is satisfied so long as "the final termination of the criminal proceeding is not inconsistent with the Plaintiff's innocence."  Appellant Br. 20 (emphasis added) (citing Penree v. City of Utica, 6:13-cv-01323, 2016 WL 915252, at *17 (N.D.N.Y. Mar. 4, 2016)).  The County Defendants respond that the underlying criminal proceeding must be terminated "in a manner that is indicative of Plaintiff's innocence."  County Br. 10 (emphasis added).  We agree with the County Defendants, and we write to dispel any confusion among district courts about the favorable termination element of a § 1983 malicious prosecution claim.

---

[4] The District Court dismissed Lanning's first malicious prosecution claim against Conine for failure to rebut the applicable presumption of probable cause and against Ashe for failure to plead Ashe's personal involvement in the prosecution.  See Lanning, 2017 WL 922058, at *3–6.  But we "may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds no[t] relied upon by the district court."  Mitchell, 841 F.3d at 77 (quotation marks omitted).

10

We have previously stated that claims for malicious prosecution under § 1983 are "substantially the same" as claims for "malicious prosecution under state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (quotation marks omitted); see also Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (a plaintiff in a § 1983 malicious prosecution action must "establish the elements of a malicious prosecution claim under state law"); Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995) (malicious prosecution claims under § 1983 are "governed by state law"). Some district courts in our Circuit have interpreted the language in these cases to mean that they must follow a State's most recent decisional law to figure out whether a termination is favorable, even with respect to federal claims brought under § 1983.[5] We now clarify that federal law defines the elements of a § 1983 malicious prosecution claim, and that a State's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements. Our prior decisions requiring affirmative indications of innocence to establish "favorable termination" therefore continue to govern § 1983 malicious

[5] See, e.g., Othman v. City of New York, 13-CV-4771, 2018 WL 1701930, at *13 (E.D.N.Y. Mar. 31, 2018); Myers v. Moore, 13-CV-1006, 2018 WL 1627255, at *13 n.9 (S.D.N.Y. Mar. 30, 2018); Cook v. Dwyer, 1:16-CV-752, 2018 WL 1626126, at *5–6 (N.D.N.Y. Mar. 30, 2018); Buckley v. Niagara Frontier Transp. Auth., 13-CV-1205-RJA-MJR, 2016 WL 8673590, at *4 (W.D.N.Y. July 22, 2016).

11

prosecution claims, regardless of developments in New York State malicious prosecution law.

Our view flows directly from the Supreme Court's decision in <u>Manuel v. City of Joliet</u>, 137 S. Ct. 911 (2017), which dealt in part with the time at which a § 1983 claim for unlawful pretrial detention accrues.  There the Supreme Court instructed courts to "look first to the common law of torts" in order to "defin[e] the contours and prerequisites of a § 1983 claim."  <u>Id.</u> at 920; <u>see also</u> <u>Carey v. Piphus</u>, 435 U.S. 247, 257–58 (1978) (common law of torts "provide[s] the appropriate starting point for the inquiry under § 1983").  "Sometimes," the Court explained, a "review of common law will lead a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort."  <u>Manuel</u>, 137 S. Ct. at 920.  But common law principles are meant simply "to guide rather than to control the definition of § 1983 claims, serving more as a source of inspired examples rather than of prefabricated components."  <u>Id.</u> at 921 (quotation marks omitted); <u>see</u> <u>Rehberg v. Paulk</u>, 566 U.S. 356, 366 (2012) (section 1983 is not "simply a federalized amalgamation of pre-existing common-law claims").  When "applying, selecting among, or adjusting common-law

approaches, courts must closely attend to the values and purposes of the constitutional right at issue." Manuel, 137 S. Ct. at 921.

Thus, in Singleton v. City of New York, our seminal decision on § 1983 malicious prosecution claims, we did not mechanically apply the law of New York State. Instead, we considered the common law of torts in multiple jurisdictions to determine whether the termination of the underlying criminal charges was favorable to the accused. 632 F.2d 185, 194–95 (2d Cir. 1980); see also San Filippo v. U.S. Tr. Co. of N.Y., 737 F.2d 246, 257 n.6 (2d Cir. 1984) ("[W]here . . . a § 1983 claim is essentially for deprivation of civil rights through malicious prosecution, federal courts will generally look to the common law requirements . . . in judging the merits of the § 1983 claim." (emphasis added) (citing Singleton, 632 F.2d at 195)). Relying on the Restatement (Second) of Torts, we noted that "[u]nder the common law, . . . it is well-settled that an accused, in order to maintain a cause of action for malicious prosecution, must establish that the state prosecution terminated in his favor," and that "[p]roceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." Singleton, 632 F.2d at 193 (emphasis added) (quoting Restatement (Second) of Torts § 660 cmt. a (Am. Law Inst. 1977)

13

("Restatement")); see Restatement §§ 658, 660; see also W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 119, at 874 (5th ed. 1984) (termination is favorable if it "reflect[s] the merits and [is] not merely a procedural victory"). We then considered whether a § 1983 claim for malicious prosecution "may be stated without alleging and proving that the prosecution terminated in some manner indicating that the person was not guilty of the offense charged." Singleton, 632 F.2d at 194–95. Observing that "[t]he common law rule" had "generally been adopted and applied by federal courts," and discerning "nothing in the common law which undermines the federal policies fostered by § 1983," we concluded that "such proof is essential." Id. at 195. Singleton's § 1983 malicious prosecution claim failed, we held, because his "guilt was left open" by the termination of his criminal charges. Id.

In Singleton, we did not think we were bound by New York law on favorable termination. Indeed, we explained there that "state tort law does not define or limit the scope of liability under § 1983." Id. Rather, we "adopted and applied" the traditional common law of malicious prosecution to the parallel federal constitutional claim brought under § 1983, reasoning that a "prosecution based on probable cause which results in" no indication of innocence "does not

14

deprive the defendant of civil rights within the meaning of § 1983." Id. In reaching this conclusion, we did not even cite New York State law. Instead, we rested our holding on the precedent of other circuits, and we explained that a contrary holding "would permit a defendant to relitigate the issue of probable cause . . . thus posing the prospect of harassment, waste and endless litigation, contrary to principles of federalism." Id.

It is true that some of our later decisions addressing malicious prosecution claims focused on the malicious prosecution tort devised by relevant States. See, e.g., Dufort v. City of New York, 874 F.3d 338, 350–51 (2d Cir. 2017) (New York); Roberts, 582 F.3d at 420–22 (Connecticut); Hygh v. Jacobs, 961 F.2d 359, 367–68 (2d Cir. 1992) (New York). But in none of these decisions did we hold that a change in any particular State's law automatically effects a change in the requirement for a federal malicious prosecution claim. To the contrary, we relied on a specific State's law only insofar as it reflected traditional common law principles as well as federal constitutional principles. See Fulton, 289 F.3d at 195–96; Murphy v. Lynn, 118 F.3d 938, 948–50 (2d Cir. 1997).

And until the early 2000s, New York courts adhered to these traditional common law principles relating to the favorable termination element of a claim

15

of malicious prosecution.  See, e.g., MacFawn v. Kresler, 88 N.Y.2d 859, 860 (1996) ("A criminal proceeding terminates favorably to the accused, for purposes of a malicious prosecution claim, when the final disposition of the proceeding involves the merits and indicates the accused's innocence."); Ward v. Silverberg, 85 N.Y.2d 993, 994 (1995); Hollender v. Trump Vill. Coop., Inc., 58 N.Y.2d 420, 425–26 (1983); see also DiBlasio v. City of New York, 102 F.3d 654, 657 (2d Cir. 1996) (observing that the New York Court of Appeals used the Restatement to define "favorable termination").  Our references to New York court decisions to guide our analysis of the favorable termination element therefore made sense.

In 2000, however, the New York Court of Appeals, in Smith-Hunter v. Harvey (a case involving dismissal for violation of the defendant's right to a speedy trial), for the first time characterized the favorable termination language in its prior cases as dicta; it simultaneously "reject[ed] the notion" that a plaintiff asserting a State tort claim for malicious prosecution, at least under the "particular circumstances" presented in that case, "must demonstrate innocence in order to satisfy the favorable termination prong."  95 N.Y.2d 191, 199 (2000).[6]

---

[6] Smith-Hunter, in holding that the dismissal of a prosecution on speedy trial grounds is a favorable termination although neutral with respect to guilt or innocence, still reflects the traditional common law.  See Restatement § 660 cmt. d (principle that abandonment

16

In 2001, in <u>Cantalino v. Danner</u>, 96 N.Y.2d 391 (2001), the Court of Appeals appeared to go further. In <u>Cantalino</u>, the Court of Appeals characterized <u>Smith-Hunter</u> as holding that "<u>any</u> termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused," 96 N.Y.2d at 395 (emphasis added). The "rule announced in <u>Smith-Hunter</u>," the Court of Appeals explained, "is one of general application," <u>id.</u> at 397. The termination in <u>Cantalino</u> involved a dismissal in the interest of justice under § 170.40 of the New York Criminal Procedure Law. Such a dismissal, the Court of Appeals concluded, can count as a favorable termination where the trial court's reasons for dismissing the charges are "not inconsistent with . . . innocence." <u>Id.</u> at 395. With that, <u>Cantalino</u> appeared to deviate[7] (as State courts are entitled to do with regard to claims under State law) from the traditional common law of torts, which, as reflected in the Restatement, requires that a favorable termination affirmatively indicate the

---

of a prosecution following certain types of misconduct by the accused is not a favorable termination does "[n]ot include[]" terminations due to "claims of constitutional or other privilege"); <u>see also</u> <u>Murphy</u>, 118 F.3d at 949–50.

[7] We need not and do not decide whether or not <u>Cantalino</u> in fact is consistent with or deviates from the traditional "indicates innocence" standard.

innocence of the accused. See Restatement § 660 cmt. a (criminal "[p]roceedings are 'terminated in favor of the accused' . . . only when their final disposition is such as to indicate the innocence of the accused").

Of course, for malicious prosecution claims brought under New York law, federal courts must faithfully apply New York tort law. See Mullaney v. Wilbur, 421 U.S. 684, 691 & n.11 (1975); see also Stampf v. Long Island R.R., 761 F.3d 192, 196, 200–01 (2d Cir. 2014). But we are not bound to apply New York law to malicious prosecution claims arising under § 1983; indeed, even though Cantalino was decided nearly twenty years ago, this Court has never applied its "favorable termination" standard to a § 1983 claim. See, e.g., Gonzalez v. City of Schenectady, 728 F.3d 149, 162 (2d Cir. 2013); Fulton, 289 F.3d at 196.

In arriving at the conclusion that we are not bound to apply New York law in this case, we recall "the values and purposes of the [federal] constitutional right at issue." Manuel, 137 S. Ct. at 921. A § 1983 claim for malicious prosecution essentially alleges a violation of the plaintiff's right under the Fourth Amendment to be free from unreasonable seizure. Swartz, 704 F.3d at 112. "The touchstone of the Fourth Amendment is reasonableness," Florida v. Jimeno, 500 U.S. 248, 250 (1991); see United States v. Lambus, 897 F.3d 368, 402 (2d Cir. 2018),

which "is measured in objective terms by examining the totality of the circumstances," Ohio v. Robinette, 519 U.S. 33, 39 (1996). When a person has been arrested and indicted, absent an affirmative indication that the person is innocent of the offense charged, the government's failure to proceed does not necessarily "impl[y] a lack of reasonable grounds for the prosecution." Conway v. Village of Mount Kisco, 750 F.2d 205, 215 (2d Cir. 1984).

Turning to the allegations in this case, we conclude that Lanning did not adequately plead that the termination of the prosecutions against him affirmatively indicated his innocence. With respect to the prosecution following his May 24, 2012 arrest, Lanning alleged that the charges against him "were dismissed" at some point after a jury trial, without specifying how or on what grounds. App'x 22, 25. This vague allegation is consistent with dismissal on any number of procedural or jurisdictional grounds, all of which fail to affirmatively indicate innocence. Nor does Lanning's attempt to narrow his initial pleading, Dist. Ct. Dkt. No. 46, at 2; Dist. Ct. Dkt. No. 47, at 13-14, help him. First, on appeals from judgments on the pleadings, we rely only on "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice." Roberts, 582 F.3d at 419. And second, Lanning

himself agrees that these dismissals were based, at least in part, on "lack of jurisdiction." Dist. Ct. Dkt. No. 46, at 2; Dist. Ct. Dkt. No. 47, at 13-14.

Similarly, none of the reasons the Glens Falls City Court stated on the record for dismissing the charges arising from Lanning's September 18, 2012 arrest indicate Lanning's innocence. To the contrary, the City Court stated (quoting the New York Court of Appeals) that the dismissal of those charges in the interest of justice was "neither an acquittal of the charges nor any determination of the merits," but rather "le[ft] a question of guilt or innocence unanswered." App'x 62–63. As we have explained in discussing "the constitutional tort of malicious prosecution in an action pursuant to § 1983," where a dismissal in the interest of justice "leaves the question of guilt or innocence unanswered[,] . . . it cannot provide the favorable termination required as the basis for [that] claim." Hygh, 961 F.2d at 367–68.

Lanning has not plausibly alleged that any of the criminal proceedings against him were terminated in a manner indicating his innocence. We therefore conclude that Lanning failed to plead a viable § 1983 claim for malicious prosecution, and we affirm the District Court's judgments dismissing his malicious prosecution claims.

## 2. Equal Protection Claim

In addition to his claims of malicious prosecution, Lanning alleged that the City and County Defendants, prompted by Jamie Lanning's relationship with Ashe, violated the Equal Protection Clause of the Fourteenth Amendment by selectively arresting and prosecuting him. The District Court dismissed this claim on the ground that Lanning had failed adequately to allege the existence of an appropriate comparator. We agree.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). Although "equal protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others. . . [,] an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out." Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601 (2008) (internal quotation marks and citations omitted); see also Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) ("Although the prototypical equal protection claim involves discrimination against people based on their

21

membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials."). To state an equal protection claim based on a theory of selective enforcement, a plaintiff must plausibly allege, among other things, that he was treated differently from other similarly situated individuals.[8]

Id. at 499.

Lanning's complaint conclusorily asserted that the Defendants "intentionally treated [him] differently from others in a similar situation, that situation being the Warren County Sheriff's Department and the Glens Falls Police Department responding to reports of potential criminal activity." App'x 29. But Lanning concedes that he failed to allege any examples of other individuals against whom reports of criminal activity were made, Oral Arg. Tr. 5:12–6:6, let alone other individuals accused of similar conduct, see Ruston v.

---

[8] Lanning's briefs characterize his equal protection claim as one based on the "selective enforcement" theory we articulated in LeClair v. Saunders, 627 F.2d 606, 609–10 (2d Cir. 1980). Appellant Br. 21–22. At oral argument, by contrast, counsel for Lanning characterized his equal protection claim as one based on the "class of one" theory articulated in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Even if we were to construe Lanning's claim as a "class of one" claim, he must still plausibly allege the existence of a similarly situated comparator. See Progressive Credit Union v. City of New York, 889 F.3d 40, 49 (2d Cir. 2018).

Town Bd. for Skaneateles, 610 F.3d 55, 58–59 (2d Cir. 2010). As "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim on which relief can be granted, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), we affirm the District Court's dismissal of Lanning's equal protection claim.

### 3. Monell Claims

Because Lanning has not plausibly alleged an underlying constitutional violation, his Monell claims against the municipal defendants necessarily fail. See Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013).

## CONCLUSION

We have considered Lanning's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.