**Kevin HOLCOMB, Plaintiff–Appellant,**

v.

**Mark LYKENS, Sean Smith, Joanne Pereria and John Gorczyk, Defendants–Appellees.**

**Docket No. 02–7838.**

United States Court of Appeals, Second Circuit.

Submitted: March 4, 2003.

Decided: July 23, 2003.

David John Mullet, Montpelier, VT, submitted a brief for Appellant.

William H. Sorrell, Vermont Attorney General, David R. Groff, Assistant Attorney General, Waterbury, VT, submitted a brief for Appellees.

Before: CALABRESI, SACK, and CUDAHY,* Circuit Judges.

SACK, Circuit Judge.

The plaintiff Kevin Holcomb brought suit under 42 U.S.C. § 1983 alleging that his procedural due process rights under the Fourteenth Amendment to the United States Constitution were violated when the defendants revoked his extended furlough[1] from prison without following the Vermont Department of Corrections' written procedures. The district court granted the defendants' motion for summary judgment, concluding that qualified immunity protects the defendants from Holcomb's claim. We affirm the judgment of the district court, but on other grounds.

## BACKGROUND

The facts underlying the judgment on appeal are not in dispute. At all relevant times, Plaintiff–Appellant Kevin Holcomb was in the custody of the Vermont Department of Corrections ("DOC") serving a lawful term of imprisonment. On March 24, 2000, Holcomb was released on furlough pursuant to 28 V.S.A. § 808 under the supervision of Defendant–Appellee Correctional Services Specialist Mark Lykens. On April 17, 2000, Holcomb notified Lykens that he, Holcomb, would start a temporary work assignment at the Moretown, Vermont, landfill on April 18, 2000. Because Holcomb could not arrange for a ride home from work on that day, he contacted his employer early that morning to arrange to begin the job a day later. Instead of beginning his temporary work assignment that day, Holcomb spent the morning looking for permanent work. In that pursuit, he visited the DOC Probation and Parole Office at 10:30 a.m. to obtain information about job openings, scheduled and attended a job interview at 11:00 a.m., and visited several employers to apply for work. As a result of his efforts, he was offered and accepted permanent employment scheduled to begin three weeks later. But Holcomb failed to inform Lykens of any of this.

During the course of the day, Holcomb's fiancée, Dawn Boothe, transported him from place to place by automobile; she had been approved by DOC to provide transportation for him during his furlough. While driving Holcomb around, Boothe suffered an asthma attack requiring her to return to her apartment to retrieve her inhaler. Although Holcomb did not have permission to be in Boothe's apartment, he nonetheless went with her to help her locate the inhaler and to use the lavatory.

---

* The Honorable Richard D. Cudahy, of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. According to Vermont Department of Corrections Directive 372.03, in effect at the relevant time:

   *Furlough*—is an approved absence from a correctional facility under precise conditions and is an extension of the limit of confinement of an offender.

   *Extended Furlough*—approved absence from a facility for 15 or more consecutive days and nights.

   *Id.* at 1 (emphasis in original).

Boothe's landlord saw Holcomb enter the apartment and notified Lykens.

Lykens thereupon contacted Holcomb and ordered him to Lykens's office. Holcomb went there as told, and was promptly placed in hand-irons and removed for incarceration pending his furlough-revocation hearing. At that hearing presided over by Defendant–Appellee Hearing Officer Sean Smith, Holcomb admitted to being "out of place" on the 18th. Smith revoked Holcomb's furlough. When Holcomb objected that such revocation was contrary to the procedures set forth in the DOC *Graduated Sanctions Manual* (July 1996) (the "Manual"), Smith said that he was not required to follow those procedures.

The following month, Holcomb, incarcerated, wrote a letter to Defendant–Appellee JoAnne Pereria, Superintendent of the Department of Corrections, asking that she reconsider his furlough revocation, and later, a letter to Defendant–Appellee DOC Commissioner John Gorzyk, asking that he overturn the furlough revocation. Pereria denied the request directed to her; Gorzyk ignored the letter directed to him. Holcomb also filed several grievances with DOC, all of which were denied. On September 6, 2000, Holcomb's appeal of the denials was denied by Commissioner Gorzyk.

Holcomb then filed a petition for a writ of habeas corpus in Vermont Superior Court, Orleans County. The writ was granted. The court (Howard E. VanBenthuysen, *Superior Judge*) concluded, and

it is undisputed before us, that the Manual applied in Holcomb's case.[2] Hearing Officer Smith had wrongly failed to follow it and had punished Holcomb excessively in violation of its provisions. *Holcomb v. Gorczyk*, No. 130–5–00, slip op. at 2–3 (Vt.Super.Ct. Oct. 5, 2000). According to the Manual, violating furlough by being "out of place," as Holcomb had been, is a "Level III" violation, which is the least serious of violations categorized in the Manual. Level III violations may not be punished by re-incarceration. Manual at 4. But because Holcomb's furlough had been revoked on at least two previous occasions, he may have been subject to sanction for a "Level II" violation under the Manual, *id.* at 5, the maximum penalty for which is thirty days' incarceration. In any event, as a result of the court's decision, Holcomb was returned to extended furlough on October 6, 2000, after 165 days of re-incarceration following his April 25, 2000, revocation hearing.

On July 11, 2001, Holcomb filed suit under 42 U.S.C. § 1983 for violation of his civil rights in the United States District Court for the District of Vermont against Lykens, Smith, Pereria, and Gorcyzk. Holcomb seeks damages for his re-incarceration,[3] attorney's fees, and costs. He contends that the defendants' violation of the DOC regulations contained in the Manual deprived him of liberty without due process of law under the Fourteenth Amendment to the United States Constitution. The district court (Jerome J. Nied-

---

**2.** On April 18, Holcomb had been free from his incarceration for twenty-six days on "extended furlough." While non-extended furlough may be revoked at an officer's discretion, extended furlough may only be revoked following an "administrative due process hearing." DOC Directive 372.03, at 3. Where, as here, the hearing stems from the

offender's "Program Violations," rather than his or her "Escape, Assault, or [a] new crime," the Manual applies. *Id.* at 2–3.

**3.** Holcomb claims that he was unlawfully re-incarcerated for 172 days, apparently calculating his re-incarceration from April 18, 2000, when he was re-incarcerated pending his revocation hearing.

ermeier, *Magistrate Judge*[4]) concluded that qualified immunity protects the defendants from suit because a liberty interest in remaining on extended furlough under DOC procedures, if it exists, was not clearly established at the time of Holcomb's revocation hearing. *Holcomb v. Lykens,* No. 2:01–CV–225, slip op. at 10, 20 (D.Vt. June 21, 2002).

Holcomb appeals.

## DISCUSSION

### I. Standard of Review

We review the district court's grant of summary judgment *de novo. See Steel Partners II, L.P. v. Bell Indus., Inc.,* 315 F.3d 120, 123 (2d Cir.2002). "Summary judgment is appropriate only where, examining the evidence in the light most favorable to the nonmoving party, the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citations, internal quotation marks, and alterations omitted); *see also* Fed.R.Civ.P. 56(c). These standards apply where, as here, the facts are not in dispute. *Cf. Steel Partners II,* 315 F.3d at 122–23.

### II. Qualified Immunity

The district court granted summary judgment to the defendants on the ground that qualified immunity protects them from suit. We ultimately agree with the court's disposition of the summary judgment motion, but on different grounds.

█ "In general, public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Weyant v. Okst,* 101 F.3d 845, 857 (2d Cir.1996). Consideration of the defense of qualified immunity involves a two-step process. Ordinarily, "we [first] address the threshold question of whether the amended complaint alleges the deprivation of an actual constitutional right. If it does, we then decide whether the right was clearly established at the time of the officers' alleged misdeeds." *Patel v. Searles,* 305 F.3d 130, 135 (2d Cir.2002) (citing *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)), *cert. denied,* — U.S. ——, 123 S.Ct. 1486, 155 L.Ed.2d 227 (2003); *see also Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? ... [T]he next, sequential step is to ask whether the right was clearly established."). In order to defeat the defendants' qualified immunity defense, then, Holcomb must allege a deprivation of an actual constitutional right clearly established at the time of the events in issue.

Holcomb asserts that he was deprived of his Fourteenth Amendment procedural due process rights when Vermont state corrections officers revoked his extended furlough without following the procedures set forth in the Manual. "The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law." *Meachum v. Fano,* 427 U.S. 215, 223, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

---

4. Magistrate Judge Niedermeier was, with the consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 73 of the United States District Court for the District of Vermont, designated to conduct all proceedings in the matter, including the entry of final judgment.

*A. Morrissey and the Protected Liberty Interest in Parole*

Although the Supreme Court has not considered whether there exists a liberty interest in extended furlough from prison of the sort enjoyed by Holcomb in the days preceding April 18, 2000, the Fourteenth Amendment's Due Process Clause creates a liberty interest in *parole,* such that *parole* revocation must be accompanied by sufficient process, *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *Morrissey,* the Court identified several aspects of parole that made "the interest of the parolee in his continued liberty," *id.* at 481–82, 92 S.Ct. 2593, similar to other citizens' interest in their continued liberty and therefore worthy of due process protection:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime.... Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.

*Id.* at 482, 92 S.Ct. 2593 (footnotes omitted). After *Morrissey,* courts considering whether the Due Process Clause creates a protected liberty interest in various forms of conditional release have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey.*

In *Young v. Harper,* 520 U.S. 143, 117 S.Ct. 1148, 137 L.Ed.2d 270 (1997), the Court, using that approach, held that a program of conditional release was "a kind of parole as [the Court] understood parole in *Morrissey,*" and that participants in that program were therefore entitled to the procedural protections set forth in *Morrissey. Young,* 520 U.S. at 152–53, 117 S.Ct. 1148. Under the Oklahoma Preparole Conditional Supervision Program at issue in *Young,* which had been implemented to reduce prison overcrowding, inmates became eligible for preparole after serving fifteen percent of their sentence and became eligible for parole after serving one-third of their sentence. *Id.* at 145, 117 S.Ct. 1148. In reaching its conclusion that this preparole sufficiently resembled parole to require federal due process protection, the Court relied on the passage in *Morrissey* quoted above:

> [H]e can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison.... The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

*Young,* 520 U.S. at 147–48, 117 S.Ct. 1148 (quoting *Morrissey,* 408 U.S. at 482, 92 S.Ct. 2593) (alterations and ellipsis in original). The Court concluded that the interest of the Oklahoma preparolee in his or her liberty was substantially similar to that of the parolee. *Young,* 520 U.S. at 149, 117 S.Ct. 1148.

At this point in the inquiry, then, the question for us with respect to Holcomb's

claim is whether Vermont's extended furlough is similar enough to parole as characterized by *Morrissey* and *Young* with respect to the extent and conditions of the liberty conferred to him as a furloughee to be treated as though it were parole for Fourteenth Amendment purposes.[5]

### B. Vermont's Extended Furlough

28 V.S.A. § 808(a) permits the DOC to grant furlough to a prisoner for a variety of reasons.[6] The statute states that furlough is not equivalent to parole:

> (c) The extension of the limits of the place of confinement authorized by this section shall in no way be interpreted as a probation or parole of the inmate, but shall constitute solely a permitted extension of the limits of the place of confinement for inmates committed to the custody of the commissioner.

28 V.S.A. § 808(c). That Vermont's furlough statute expressly denies equivalence between furlough and parole is of little assistance in our inquiry, however. If the

conditions of extended furlough are sufficiently similar to the conditions of parole described in *Morrissey*, then a furloughee has a liberty interest in furlough that commands due process protection.

Under the authority of 28 V.S.A. § 102(c)(1), the Commissioner of the DOC may promulgate "rules" and "regulations" to discharge his or her responsibilities. DOC Directive 372.03, entitled "Furlough Revocation," sets forth the basic contours of the procedures for revoking furloughs. The directive distinguishes between furlough for fewer than fifteen days and furlough for fifteen or more days. DOC Directive 372.03, at 1. The second type of furlough, as noted above, is called "extended furlough," and may be "renewed every fifteen days." DOC Directive 372.03, at 1, set forth in pertinent part in footnote 1, above.

Under the directive, non-extended furlough may be terminated "at any time at the discretion of the person who autho-

---

**5.** Four years prior to *Young*, the Vermont Supreme Court, in *Conway v. Cumming*, 161 Vt. 113, 116, 636 A.2d 735 (1993), concluded that Vermont's furlough in its non-extended form is not similar enough to parole to give rise to a protectable liberty interest. But *Conway* did not consider *extended* furlough—the type of conditional release at issue here—and did not have the benefit of *Young;* neither would *Conway* relieve us of our obligation to determine Holcomb's due process rights under the federal Constitution for ourselves.

**6.** Section 808(a) provides in relevant part:

> **Furloughs granted to offenders and inmates; medical furlough**
>
> (a) The department may extend the limits of the place of confinement of an inmate at any correctional facility if the inmate agrees to comply with such conditions of supervision the department, in its sole discretion, deems appropriate for that inmate's furlough. The department may authorize furlough for any of the following reasons:
>
> (1) To visit a critically ill relative; or
>
> (2) To attend a funeral of a relative; or

(3) To obtain medical services; or

(4) To contact prospective employers; or

(5) To secure a suitable residence for use upon discharge; or

(6) To continue the process of reintegration initiated in a correctional facility. The inmate may be placed in a program of conditional reentry status by the department upon the inmate's completion of the minimum term of sentence. While on conditional reentry status, the inmate shall be required to participate in programs and activities that hold the inmate accountable to victims and the community pursuant to section 2a of this title; or

(7) When recommended by the department and ordered by a court. The inmate may be sentenced to serve a term of imprisonment but placed by a court on furlough to participate in such programs administered by the department in the community that reduce the offender's risk to reoffend or that provide reparation to the community in the form of supervised work activities.

rized the furlough .... No formal procedures are required." DOC Directive 372.03, at 2. Extended furlough, by contrast, may only be terminated for "any behavior that may be detrimental to the offender, the community, the facility or the Department of Corrections," and such termination must be preceded by "an administrative due process hearing." DOC Directive 372.03, at 3.

It is clear that these furlough protections apply to *termination* of extended furlough: During the course of a fifteen-day period of extended furlough, DOC may not terminate the furlough without a hearing. But it is not clear whether they apply to the *refusal to renew* extended furlough: Neither the Vermont statute nor DOC regulations tell us whether DOC may, at the end of a given fifteen day period, decline to renew furlough without giving the furloughee a hearing, or whether such refusal must also be preceded by a hearing and justified by a finding of improper behavior.

We think that this question must be resolved in order for us to determine whether Vermont's extended furlough is sufficiently similar to *Morrissey*'s characterization of parole to constitute a liberty interest requiring due process protection. In *Morrissey*, the Court focused on the parolee's reliance "on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." 408 U.S. at 482, 92 S.Ct. 2593. If extended furlough must be renewed every fifteen days absent a finding of improper behavior, there is a good argument to be made that the furloughee has a reasonable expectation that he or she will maintain his or her status so long as he or she behaves properly. If, on the other hand, DOC may decline to renew extended furlough entirely at its discretion, the argument that the furloughee has such an expectation is severely, perhaps fatally, weakened.

### C. Whether Qualified Immunity Is Available to the Defendants

The district court decided that whatever Holcomb's rights with respect to the defendants' revocation of his extended furlough, they were not clearly established at the time of the revocation and the defendants were therefore entitled to qualified immunity. We are, of course, not bound by the district court's approach and are not entirely persuaded that it was justified in the present case. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Wilson,* 526 U.S. at 609, 119 S.Ct. 1692; *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999); *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). But "[i]t is well-settled that we may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." *Olsen v. Pratt & Whitney Aircraft,* 136 F.3d 273, 275 (2d Cir.1998) (citation and internal quotation marks omitted). We decline to decide the qualified immunity issue upon which the district court granted the defendants' motion for summary judgment. We affirm, instead, on other grounds.

### II. Deprivation of Liberty Without Due Process

■ "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citation and internal quotation marks omitted). In *Mathews,* the Supreme Court set forth a list of factors to be considered in determining whether sufficient process was deployed: (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of the

interest and the probable value of additional procedural safeguards, and (3) the fiscal and administrative burden that additional process would impose on the government. *Id.* at 335, 96 S.Ct. 893. Assuming that Holcomb correctly reads Vermont law and that extended furlough is equivalent to parole for due process purposes, we conclude that he was entitled to no more process when his extended furlough was revoked than was the plaintiff parolee in *Morrissey* when his parole was revoked.

In *Morrissey,* the Supreme Court read the Fourteenth Amendment to require the following as the minimal procedure for revocation of parole:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U.S. at 489, 92 S.Ct. 2593. It is uncontested that all of these requirements were met in Holcomb's case. On April 18, 2000, Holcomb (a) received written notice of the claims violation of his extended furlough; (b) admitted to the violation, namely being out of place; (c) had a revocation hearing on April 24, 2000, in which he had the opportunity to be. heard in person and present witnesses and documentary evidence; (e) presented his case before a neutral and detached hearing officer; (f) received two written statements explaining the evidence relied on and the reasons for

revoking his parole, namely Smith's and Lykens's. Requirement (d) does not appear to be applicable because no adverse witnesses appear to have been called.

Holcomb thus cannot—and to his credit he does not—argue that Vermont failed to meet the *Morrissey* requirements. He argues instead that the defendants failed to follow the DOC Manual. Although for purposes of his *state* habeas petition the question was whether Holcomb received an appropriate sanction under *state* law, for purposes of his *federal* procedural due process claim the question is whether he received the procedural protection mandated by the federal Constitution.

■ "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Although state laws may in certain circumstances create a constitutionally protected entitlement to substantive liberty interests, *see, e.g., Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Tracy v. Salamack,* 572 F.2d 393, 396 & n. 9 (2d Cir.1978) (per curiam), state statutes do not create federally protected due process entitlements to specific state-mandated procedures. "Elevating a state-mandated procedure to the status of a constitutionally protected liberty or property interest, would make process an end in itself rather than a requirement whose constitutional purpose is to protect a substantive interest in which the individual has a claim of entitlement." *Sealed v. Sealed,* 332 F.3d 51, 57 n. 5 (2d Cir.2003) (quoting *Olim,* 461 U.S. at 250–51, 103 S.Ct. 1741, and *Doe v. Milwaukee County,* 903 F.2d 499, 503 (7th Cir.1990) (internal quotation marks omitted)).

Even were we to assume that Vermont law creates a federally protected entitle-

ment to extended furlough, it did not create a similarly protected entitlement to the specific procedures outlined in Vermont Department of Corrections Directive 372.03. Rather, any entitlement to extended furlough would be federally protected by the processes created by the Fourteenth Amendment and outlined in *Morrissey.* These procedures were followed by the defendants when they revoked Holcomb's extended furlough. The defendants may have breached Vermont law or their own procedures, and their conduct may have been deplorable for that reason, but it did not violate the Fourteenth Amendment.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.